UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COLLIN D. PITTMAN,

        Petitioner,

                                 Civil Case No. 14-14405
v.                              Honorable Linda V. Parker

STEVE RIVARD,

        Respondent.

_____/

**OPINION AND ORDER
DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY,
AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

## I. INTRODUCTION

Michigan prisoner Collin D. Pittman ("Petitioner") has filed a pro se habeas corpus petition challenging his Oakland County convictions for two counts of criminal sexual conduct. Petitioner raises twelve claims regarding probable cause to arrest him, a state deadline for trying him, the admission of certain evidence at trial, the prosecutor's conduct, the trial court's rulings and jury instructions, the assistance provided by trial and appellate counsel, his sentence, and newly discovered evidence. The State urges the Court to deny the petition on grounds that Petitioner's claims are procedurally defaulted, are not cognizable on habeas review, or are meritless. Additionally, the State contends that the state courts'

rejection of Petitioner claims was objectively reasonable. The Court agrees that Petitioner's claims do not warrant relief. Accordingly, the petition will be denied.

## II.   BACKGROUND

Petitioner's convictions arose from criminal sexual conduct involving his niece, the victim, when she was about fourteen years old.

At Petitioner's jury trial in Oakland County Circuit Court, sixteen-year-old MJ[1] testified that she was living in a residential center for juvenile delinquents. She previously lived at Children's Village in Pontiac, where she and the victim became friends. At some point during the girls' stay at Children's Village, the victim confided in her about something. MJ advised the victim to tell a counselor about the matter, and the victim took her advice. MJ admitted that she was rewarded for good behavior while confined as a juvenile delinquent and that she would prefer living in the community, but she denied being promised anything for her testimony.

Yolanda Stafford testified that she was a youth specialist at Oakland County Children's Village where she met MJ and the victim. According to Stafford, one night at bedtime, the victim informed her of something that Ms. Stafford had to report. The victim did not provide any details or a name, but she did mention that

[1] The Court is referring to the witness by her initials because she was a juvenile at the time.

the person was related to her. Ms. Stafford's supervisor completed a form about the matter, and the matter was recorded on a log.

The victim testified that her date of birth was October 21, 1990, and that she was almost nineteen years old. She explained that, when she was about fourteen years old, she and her brother stayed at her grandfather's house while her mother was in the process of moving. Petitioner was her uncle, and he was also living at her grandfather's house at the time. One night, her grandfather was sleeping upstairs, and her brother was asleep in a back room. She was sleeping on a couch in the living room of the house when her uncle approached her and laid on top of her. He used his private part to touch her "butt," and he used his hand to touch both her "butt" and her private part. Then he took off her underpants and inserted his penis in her vagina. Afterward, he got up and went upstairs. She went to the bathroom and noticed blood on her underwear and nightgown. She spent the rest of the night in her brother's room with the door locked.

The victim did not disclose the incident to her grandfather or brother because she did not think they would believe her, and she did not tell her mother because her uncle was her mother's brother, and her mother would have been hurt by the information. She ultimately revealed the incident to MJ at the Children's Village when MJ informed her about what had happened to her. She went back to

her grandfather's house many times after the incident with her uncle, but her uncle would act as though nothing had happened.

On cross-examination, the victim expressed some uncertainty about the date of the crimes. She also admitted that, when Petitioner got locked up, she used to write letters to him, and in one letter she wrote that she loved him and missed him. The victim explained that her mother pressured her to write to Petitioner and that she had not wanted her mother to know what Petitioner had done to her.

The victim's mother, Eugenia Pittman, testified that Petitioner and the victim were very close at one time. Their relationship deteriorated at some point, and in 2007, the victim disclosed something to Ms. Pittman. Regarding Petitioner, Ms. Pittman testified that he could be good at times and bad at times. One time in 2005, he became violent with a person in the victim's presence. He beat one of his cousins and threatened to kill someone.

Sarah Killips testified as an expert in forensic interviewing and the characteristics of child sexual assault victims. She interviewed the victim on January 23, 2008, when the victim was seventeen years old. The victim made an allegation of sexual abuse by an uncle. Ms. Killips opined that it was common for children to delay disclosure of sexual abuse.

Petitioner chose not to testify, but he presented Detective Paul McDougal and his brother Anthony Pittman as defense witnesses. Detective McDougal testified that he wrote in his incident report that the crimes occurred between the months of October and November 2005. He admitted that he did not go in the house where the crimes supposedly occurred and that he did not interview the victim or the victim's mother, brother, or grandfather. He also did not know whether Petitioner was in custody on October 4, 2005.

Petitioner's brother, Anthony Pittman, testified that he was living with his father and nephew in 2004 and 2005 and that the victim may have spent a night or two there when she did not have a ride. Anthony denied hearing any commotion that would suggest the victim had been assaulted, and he did not see any signs that anything inappropriate had occurred at the house. Anthony described Petitioner as a nice guy who was helpful. He admitted that Petitioner had gone to prison more than once for drugs, but he did not think that Petitioner had a drug problem. He was unaware of a conviction for assault and battery, and he did not think Petitioner had a history of violent behavior. He also did not see a violent outburst between Petitioner and one of his nephews.

The parties stipulated that Petitioner was in custody from July 13, 2004 to December 29, 2004, from August 19, 2005 to September 7, 2005, and from

October 4, 2005 to the present. They further stipulated that Petitioner was not in custody from December 29, 2004 to August 10, 2005 and from September 7, 2005 to October 4, 2005.

On October 16, 2009, the jury found Petitioner guilty, as charged, of one count of first-degree criminal sexual conduct in violation of Michigan Compiled Laws § 750.520b(1)(b)(ii), and one count of second-degree criminal sexual conduct in violation of Michigan Compiled Laws § 750.520c(1)(b)(ii). The trial court sentenced Petitioner as a habitual offender to concurrent terms of imprisonment of twenty-two years, nine months to forty years.

On appeal from his convictions, Petitioner argued: (1) he was denied a fair trial by extensive evidence that he had been in prison; (2) he was denied due process and a fair trial by evidence that he had engaged in violent behavior, the prosecutor's statement that Petitioner had been convicted of assault and battery, evidence that he had gone to prison for a drug offense, and the prosecutor's argument regarding illegal drugs; (3) the evidence was insufficient to support his convictions beyond a reasonable doubt; (4) the time limits of Michigan Compiled Laws § 780.131(1) were violated; (5) offense variable four of the Michigan sentencing guidelines was improperly scored at ten points; and, (6) defense counsel deprived him of effective assistance by failing to make proper objections and a

record.  These six claims form Petitioner's first six grounds for federal habeas relief.

The Michigan Court of Appeals rejected Petitioner's claims and affirmed his convictions in an unpublished, per curiam decision.  *People v. Pittman*, No. 297391, 2011 WL 2555389 (Mich. Ct. App. June 28, 2011).  On November 21, 2011, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues.  *People v. Pittman*, 805 N.W.2d 202 (Mich. 2011).

In June 2012, Petitioner filed a motion for relief from judgment in the state trial court in which he raised the following arguments: (1) the trial court abused its discretion and deprived him of a fair trial by failing to dismiss his case for a violation of the State's 180-day rule, failing to appoint substitute counsel despite a conflict of interest, improperly instructing the jury on "mental anguish," failing to grant a directed verdict of acquittal, and exceeding the sentencing guidelines without substantial and compelling reasons; (2) the prosecutor deprived him of a fair trial by coaching and intimidating witnesses, using perjured testimony, and shielding the victim from him; (3) the police lacked probable cause to arrest him; and, (4) trial counsel was ineffective for failing to investigate witnesses and consult Petitioner.  These claims form the basis for Petitioner's seventh through tenth habeas claims.  The trial court denied Petitioner's motion because he previously

raised, or could have raised, the claims on appeal and because Petitioner had not met his burden of proving entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Pittman*, No. 09-226631-FC, Op. and Order (Oakland Cty. Cir. Ct. Nov. 21, 2013).

Petitioner appealed the trial court's decision, but the Michigan Court of Appeals denied leave to appeal for the reasons given by the trial court: Petitioner had alleged grounds for relief which were previously decided against him or could have been raised on appeal and because he failed to establish entitlement to relief under 6.508(D). *People v. Pittman*, No. 320131 (Mich. Ct. App. Apr. 18, 2014). Petitioner did not appeal the Michigan Court of Appeals' decision. *See* Affidavit of Larry Royster, Clerk of the Michigan Supreme Court, ECF No. 8-14.

In a post-conviction motion for an evidentiary hearing, Petitioner purported to have newly discovered impeachment evidence. He also alleged that he was denied the effective assistance of appellate counsel. These arguments comprise Petitioner's eleventh and twelfth habeas claims. The trial court treated Petitioner's motion as a successive motion for relief from judgment and denied the motion. *People v. Pittman*, No. 2009-226631-FC, Order (Oakland Cty. Cir. Ct. Feb. 27, 2014). Petitioner raised the same two issues in the Michigan Court of Appeals, which dismissed Petitioner's appeal under Michigan Court Rule 7.203(F)(1),

because Petitioner was attempting to appeal the denial of a successive motion for relief from judgment. *People v. Pittman*, No. 322425 (Mich. Ct. App. July 21, 2014).

Petitioner appealed to the Michigan Supreme Court, which denied leave to appeal because Petitioner's motion was prohibited by Michigan Court Rule 6.502(G), the rule governing second or successive motions for relief from judgment. *People v. Pittman*, 861 N.W.2d 899 (Mich. 2015). On September 9, 2015, the Michigan Supreme Court denied Petitioner's motion for reconsideration. *People v. Pittman*, 868 N.W.2d 471 (Mich. 2015).

Finally, on November 17, 2014, Petitioner filed his habeas corpus petition. Although the State argues in an answer to the habeas petition that some of Petitioner's claims are procedurally defaulted, a procedural default is not a jurisdictional matter. *Trest v. Cain*, 522 U.S. 87, 89 (1997). Additionally, to prevail on procedurally defaulted claims, a petitioner "must establish cause and prejudice for the defaults" and "also show that the claims are meritorious." *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010). In the interest of efficiency, the Court will bypass the alleged procedural defaults and go directly to the merits of Petitioner's claims, as the claims lack substantive merit, and "the cause-and-prejudice analysis adds nothing but complexity to the case." *Id*.

## III. STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-

court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103.

Furthermore, a state court's determination of a factual issue is presumed to be correct unless the petitioner rebuts the presumption of correctness with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Holland v. Rivard*, 800 F.3d 224, 242 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 1384 (2016). In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

# IV. ANALYSIS

## A. Claim One: Inadmissible Evidence of Imprisonment

Petitioner alleges in claim one that he was denied a fair trial by extensive evidence that he had been in prison. As examples of this, Petitioner points to: the prosecutor's comments during opening statements that the crimes occurred when Petitioner was home after being away (10/15/09 Trial Tr., Afternoon Session, at 14 and 18, ECF No. 8-5 at Pg ID 297, 301); defense counsel's reference to correspondence between Petitioner and the victim (*id*. at 25, Pg ID 308); the victim's testimony that, after the crime, Petitioner "was still out" and "still around" (*id*. at 119, Pg ID 402); the victim's testimony about her correspondence with Petitioner while Petitioner was in prison (*id*. at 124, Pg ID 407); defense counsel's question to Detective McDougal as to whether Petitioner was in custody on October 4, 2005 (10/16/09 Trial Tr. at 124-28, ECF No. 8-6 at Pg ID 541-45); and the prosecutor's closing argument that the range of dates when the crimes occurred was based on times when Petitioner was not in custody (*id*. at 145-46, Pg ID 562-63).

The Michigan Court of Appeals determined that some of these references to Petitioner's incarceration were not prejudicial and that Petitioner opened the door

to other comments about his prior incarceration. This Court agrees for the following reasons.

First, as noted by the Michigan Court of Appeals, the jury would not necessarily have understood the comments and testimony about Petitioner being away, "still out," or "still around" to mean that Petitioner had been in prison. Second, it was defense counsel who elicited testimony that the victim had written to Petitioner in prison. It was also defense counsel who asked Detective McDougal whether Petitioner was in custody on October 4, 2005. Because defense counsel invited the claimed errors, Petitioner may not claim now that the errors deprived him of a fair trial. *See Fields v. Bagley,* 275 F.3d 478, 486 (6th Cir. 2001) ("When a petitioner invites an error in the trial court, he is precluded from seeking habeas corpus relief for that error.")

Finally, part of Petitioner's defense was that he could not have committed the crimes because he was in custody at the time. The Court, therefore, concludes that the references to Petitioner being in custody did not violate his right to a fair trial. The references were either too vague to be prejudicial or they were invited errors that were meant to support the defense theory.

## B.    Claim Two:  Prosecutorial Misconduct

Petitioner alleges in claim two that he was denied due process and a fair trial when the prosecutor did the following:  elicited Ms. Pittman's testimony that Petitioner previously engaged in violent behavior  (10/16/05 Trial Tr. at 21-24, ECF No. 8-6 at Pg ID 438-39); asked Petitioner's brother whether Petitioner had been convicted of assault and battery and had gone to prison for a drug offense (*id*. at 113-14, Pg ID 530-31); and stated during her closing argument that Petitioner may have committed the crimes in question while he was under the influence of illegal drugs (*id*. at 124, Pg ID 541).

### 1.    Clearly Established Federal Law

"Claims of prosecutorial misconduct are reviewed deferentially" in a habeas corpus proceeding. *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004).  "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  The relevant question is whether the prosecutor's conduct infected the trial with such unfairness as to make the resulting conviction a denial of due process. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

> Because that standard is "a very general one," courts have considerable leeway in resolving such claims on a case-by-case basis. *Parker v. Matthews*, 567 U.S. 37, 48, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012) (per curiam).  That leeway increases in assessing a state court's ruling under AEDPA.  [Courts] "cannot set aside a state court's

14

conclusion on a federal prosecutorial-misconduct claim unless a
petitioner cites . . . other Supreme Court precedent that shows the state
court's determination in a particular factual context was
unreasonable." *Trimble [v. Bobby*, 804 F.3d 767, 783 (6th Cir.
2015)].

*Stewart v. Trierweiler*, 867 F.3d 633, 638-39 (6th Cir. 2017).

## 2.    Application

Testimony from the victim's mother that Petitioner had previously engaged

in violent behavior was proper because it explained why the victim may have

feared Petitioner and delayed disclosing what Petitioner had done to her.  This was

relevant evidence, and according to the Michigan Court of Appeals, it was offered

for a proper purpose under the Michigan Rules of Evidence.  *Pittman*, 2011 WL

2555389, at *2.

Likewise, the prosecutor's questions about Petitioner's prior convictions for

assault and battery and a drug offense were proper.  Because Petitioner's brother

initially vouched for Petitioner's character, the prosecutor was permitted to cross-

examine him about Petitioner's specific acts of misconduct.  According to the

Michigan Court of Appeals, the testimony was admissible to rebut the brother's

favorable character evidence and to test his knowledge and candor.  The state

court's interpretation of state law binds this Court sitting in habeas corpus,

*Bradshaw v. Richey*, 546 U.S. 74, 76 (2005), because "it is not the province of a

federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

The prosecutor's comment during closing arguments that Petitioner may have committed the crimes in question while he was under the influence of illegal drugs was not improper for a different reason. The comment was a reasonable inference from the victim's testimony that Petitioner was not acting normally on the night in question (10/15/09 Trial Tr., Afternoon Session, at 91-92, ECF No. 8-5 at Pg ID 374-75) and that he had acted as though she was not his niece and did not care about what he was doing (*id*. at 83-84, Pg ID 366-67). Prosecutors may "forcefully assert inferences from the evidence." *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008). Moreover, the Court cannot conclude that the prosecutor's conduct infected the trial with such unfairness as to make the resulting conviction a denial of Petitioner's due process rights.

To conclude, the disputed comments and questions did not deprive Petitioner of a fair trial, and the state appellate court's rejection of Petitioner's claim was not unreasonable. Furthermore, to the extent Petitioner is complaining that the trial court erred by permitting the prosecutor to introduce evidence of Petitioner's propensity to commit crime, his claim is not cognizable on habeas review. "There is no clearly established Supreme Court precedent which holds that a state violates

due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Thus, "there is no Supreme Court precedent that the trial court's decision could be deemed 'contrary to' under AEDPA." *Id.* at 513. Petitioner has no right to relief on the basis of his prosecutorial-misconduct claims.

### C. Claim Three: Insufficient Evidence

Petitioner alleges next that the evidence was insufficient to support his convictions beyond a reasonable doubt. The Michigan Court of Appeals concluded on direct review of Petitioner's claim that his challenge to the sufficiency of the evidence failed.

#### 1. Clearly Established Supreme Court Precedent

The United States Supreme Court has held "that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Following *Winship*, the critical inquiry on review of a challenge to the sufficiency of the evidence supporting a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing

17

the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citations and footnote omitted) (emphases in original).

The Supreme Court has "made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (*per curiam*). First, it is the responsibility of the jury to decide what conclusions should be drawn from the evidence admitted at trial. *Id*. (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per curiam*)). "And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id*. (quoting *Smith*, 565 U.S. at 2); *see also Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017) (explaining that "two layers of deference apply [to a sufficiency-of-the-evidence claim], one to the jury['s] verdict, and one to the state appellate court").

## 2. Application

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16. To prove first-degree criminal sexual conduct, as charged in this case, the prosecutor had to prove that Petitioner was related to the victim and sexually penetrated her when she was thirteen, fourteen, or fifteen years of age. Mich. Comp. Laws § 750.520b(1)(b)(ii). To prove second-degree criminal conduct, the prosecutor had to prove that Petitioner was related to the victim and had sexual contact with her when she was thirteen, fourteen, or fifteen years of age. Mich. Comp. Laws § 750.520c(1)(b)(ii).

As previously explained, the victim testified that Petitioner was her uncle and that he penetrated her vagina with his penis when she was fourteen years old. She also testified that Petitioner touched her "butt" and genital area with his hand. (10/15/05 Trial Tr., Afternoon Session, at 63, 65, 77-83, ECF No. 8-5 at Pg ID 346, 348, 360-66.) This testimony established the elements of first-degree and second-degree criminal sexual conduct, and in criminal sexual conduct cases, the victim's testimony need not be corroborated. Mich. Comp. Laws § 750.520h; *People v. Solloway*, 891 N.W.2d 255, 262 (Mich. Ct. App. 2016), *appeal denied*, 894 N.W.2d 604 (Mich. 2017).

Nevertheless, Petitioner maintains that the victim was not credible. He points to the victim's testimony that the crimes occurred shortly before her birthday on October 21, 2005 (10/15/09 Trial Tr., Afternoon Session, at 100-01, 116-17, ECF No. 8-5 at Pg ID 383-84, 399-400), even though the parties stipulated that Petitioner was in custody from October 5, 2005, to the present (10/16/05 Trial Tr. at 79, ECF No. 8-6 at Pg ID 496). Additionally, the victim was unsure whether the crimes occurred during winter, summer, spring, or fall (10/15/09 Trial Tr., Afternoon Session, at 106-07, ECF No. 8-5 at Pg ID 380-81), and she continued to go back to her grandfather's home after the incident even though Petitioner was there (*id*. at 91, Pg ID 374).

While it is true that the victim was uncertain about when the crimes occurred, "time is not of the essence nor a material element in a criminal sexual conduct case, at least where the victim is a child." *People v. Stricklin*, 413 N.W.2d 457, 463 (Mich. Ct. App. 1987). This is true even in cases where the defendant claims to have an alibi. *People v. Dobek*, 732 N.W.2d 546, 565 (Mich. Ct. App. 2007).

Furthermore, the jury could have inferred from the victim's testimony that the crimes occurred on October 1, 2, or 3, 2005. This brief block of time was shortly before her birthday on October 21, 2005, and it coincided with the time that

Petitioner was not in custody.  Also, as the Michigan Court of Appeals pointed out, the jury could have reasoned that the victim's uncertainty about the dates was due to her not disclosing the incident until 2007 and not testifying at Petitioner's trial until 2009.

Finally, "'attacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence,'" *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002) (quoting *United States v. Adamo,* 742 F.2d 927, 935 (6th Cir. 1984)), and an assessment of a witness's credibility generally is "beyond the scope of federal habeas review of sufficiency of evidence claims."  *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).  In sufficiency-of-the-evidence challenges, the Court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury."  *Tanner*, 867 F.3d at 672.

A rational trier of fact could have concluded from the evidence, when viewed in the light most favorable to the prosecution, that Petitioner was not in custody when the crimes occurred.  A rational trier of fact also could have concluded that Petitioner was related to the victim and that he engaged in sexual penetration and sexual contact with the victim when she was at least thirteen years of age and less than sixteen years of age.  Therefore, the evidence was sufficient to

support Petitioner's convictions, and the decision of the Michigan Court of Appeals was neither contrary to, nor an unreasonable application of, *Jackson.*

Petitioner has no right to relief on the basis of his challenge to the sufficiency of the evidence. The mere existence of sufficient evidence to convict defeats his claim. *Matthews*, 319 F.3d at 788-89.

### D. Claim Four: Violation of the State's 180-Day Rule

Petitioner alleges next that the charges against him should have been dismissed because the State's 180-day rule was violated. This rule provides:

> Whenever the department of corrections receives notice that there is pending in this state any untried warrant, indictment, information, or complaint setting forth against any inmate of a correctional facility of this state a criminal offense for which a prison sentence might be imposed upon conviction, the inmate shall be brought to trial within 180 days after the department of corrections causes to be delivered to the prosecuting attorney of the county in which the warrant, indictment, information, or complaint is pending written notice of the place of imprisonment of the inmate and a request for final disposition of the warrant, indictment, information, or complaint.

Mich. Comp. Laws § 780.131(1). The remedy for a violation of this rule is dismissal of the charges with prejudice. Mich. Comp. Laws § 780.133.

The alleged violation of the State's 180-day rule is not a basis for habeas relief because, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *McGuire*, 502 U.S. at 68. "A federal court may not issue the writ

on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Petitioner attempts to raise his claim as a federal constitutional issue by alleging that the failure of the Michigan Department of Corrections to send the appropriate notice to the prosecutor violated his right to due process. Petitioner appears to argue in the alternative that the prosecution did receive notice of his incarceration, but failed to try him within 180 days.

Petitioner admitted in the trial court that he was arraigned on April 22, 2009. He would have received notice of the charges then. His trial commenced six months and eight days later on October 15, 2009, and he has not shown, or even alleged, how he was prejudiced by the delay in trying him. As the Michigan Court of Appeals reasoned, "[t]o establish a due process violation requiring reversal, a defendant must prove prejudice to his defense." *Pittman*, 2011 WL 2555389, at *1 (citing *People v. McGee*, 672 N.W.2d 191, 201 (Mich. Ct. App. 2003); *see also United States v. Schaffer*, 586 F.3d 414, 425 (6th Cir. 2009) (quoting *United States v. Gouveia*, 467 U.S. 180, 192 (1984)) ("The Supreme Court has repeatedly emphasized that, in order to establish a due process violation, the defendant must show that the delay 'caused him *actual* prejudice in presenting his defense.'"). Thus, Petitioner's right to due process was not violated.

### E.     Claim Five:  Improperly Scored Offense Variable

Petitioner alleges that the trial court erred by scoring ten points for offense variable four of the Michigan sentencing guidelines.  The Michigan Court of Appeals disagreed and concluded that the trial court did not abuse its discretion when scoring the offense variable.

This Court finds no merit in Petitioner's claim because a challenge to the state court's application and interpretation of state sentencing guidelines is "a matter of state concern only," *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003), and "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  Consequently, Petitioner's claim is not cognizable on habeas review.  *Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006); *Robinson v. Stegall*, 157 F. Supp. 2d 802, 823 (E.D. Mich. 2001).  A sentencing claim based on an alleged violation of Michigan law simply fails to state a claim on which habeas relief may be granted.  *Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000).

Petitioner nevertheless contends that he was sentenced on inaccurate information. A sentence based on extensively and materially false information that the defendant had no opportunity to challenge violates due process. *Townsend v.*

*Burke*, 334 U.S. 736, 741 (1948). For the following reasons, however, this Court finds that the trial court did not rely on extensively and materially false information.

Offense variable four "is psychological injury to a victim." Mich. Comp. Laws § 777.34(1). Ten points is appropriate if "[s]erious psychological injury requiring professional treatment occurred to a victim." Mich. Comp. Laws § 777.34(1)(a). "In making this determination, the fact that treatment has not been sought is not conclusive." Mich. Comp. Laws § 777.34(2). A score of zero is proper if "[n]o serious psychological injury requiring professional treatment occurred to a victim." Mich. Comp. Laws § 777.34(1)(b).

According to Petitioner, there was no testimony that the victim received any professional treatment or even that she needed professional treatment. The Michigan Court of Appeals, however, correctly pointed out that the victim

> blamed her significant behavioral problems, to which her mother testified, on defendant's assault. Also, at trial, the victim appeared to become so overwhelmed while testifying about the assault that she simply stopped answering questions and cried. Further, the victim's mother indicated that the victim would not provide an impact statement because it was still very hard for her to talk to anyone about what happened.

*Pittman*, 2011 WL 2555389, at *4.

This Court agrees with the Michigan Court of Appeals that "it was reasonable for the trial court to deduce that the victim suffered a serious psychological injury." *Id*. The trial court did not rely on extensively and materially false information. Therefore, Petitioner is not entitled to re-sentencing.

### F.    Claim Six:  Ineffective Assistance of Trial Counsel

Petitioner alleges that his trial attorney deprived him of effective assistance by failing to make proper objections and a record. Petitioner appears to argue, as he did in state court, that defense counsel was ineffective for failing to object to evidence that he had been in prison and to the prosecutor's questions or elicitation of evidence concerning his other "bad acts." The Michigan Court of Appeals considered this issue on direct review and concluded that defense counsel was not ineffective.

### 1.    Clearly Established Supreme Court Precedent

The "clearly established Federal law" for claims of ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668 (1984). *Pinholster*, 563 U.S. at 189. Under *Strickland*, a defendant must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "Unless a defendant makes both showings, it cannot be said that

the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

"[T]he proper standard for attorney performance is that of reasonably effective assistance." *Id.* The defendant must show "that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688.

The "prejudice" prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. A defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

## 2. Application

Trial counsel's failure to object to comments about Petitioner being away was not deficient performance because the comments were vague and did not mention Petitioner's incarceration. Further, counsel's intentional elicitation of testimony that Petitioner had been in prison was a strategic decision, meant to show that Petitioner could not have committed the charged crimes. Because this was a reasonable trial strategy, counsel's performance was not deficient.

The prosecutor's comments and questions about Petitioner's past violence and convictions were relevant and proper under state law, and the prosecutor's closing argument about Petitioner possibly being under the influence of illegal drugs when the crimes occurred was a reasonable inference from the evidence. The prosecutor's conduct was not improper, and, therefore, defense counsel's failure to object to the conduct did not constitute ineffective assistance. Further, the state appellate court's finding – that trial counsel was not ineffective – was neither contrary to, nor an unreasonable application of, *Strickland*. Habeas relief is not warranted on Petitioner's claim.

### G. Claim Seven: Abuse of Discretion

#### 1. Failure to Dismiss the Charges

Petitioner alleges that the trial court abused its discretion and deprived him of a fair trial by denying his motion to dismiss his case for a violation of the State's 180-day rule.

The prosecuting attorney in Petitioner's case argued that the 180-day rule was not triggered because the Michigan Department of Corrections never sent a certified notice of Petitioner's incarceration to her office. (10/14/09 Hr'g Tr. at 8, 11, ECF No. 8-3 at Pg ID 140, 143; 10/15/09 Trial Tr., A.M. Session, at 8-11, ECF No. 8-4 at Pg ID 152-55.) According to Petitioner's trial counsel, he spoke by

telephone to an employee of the Michigan Depart of Corrections who conceded to defense counsel that the Department of Corrections never sent a certified notice of Petitioner's incarceration to the prosecutor. (10/14/09 Hr'g Tr. at 3-7, ECF No. 8-3 at Pg ID 135-39.) Furthermore, the prosecutor pointed out that the case had been moving along since March 2009 when the prosecution became aware of the case, that Petitioner had not been held in jail, and that the prosecution had acted in good faith. (*Id*. at 9.)

Petitioner argued that the detective in the case received notification from the Department of Corrections as early as April 7, 2009. (10/15/09 Trial Tr., A.M. Session, at 5, ECF No. 8-4 at Pg ID 149.) Yet, "investigating police officers . . . are not part of the prosecutor's office," and "[t]he 180–day–rule statute expressly provides that the Department of Corrections must deliver a written notice of incarceration and request for disposition 'to the prosecuting attorney of the county in which the warrant, indictment, information, or complaint is pending . . . .' " *People v. Williams*, 716 N.W.2d 208, 214-15 (Mich. 2006) (quoting Mich. Comp. Laws § 780.131(1)).

Here, the Michigan Department of Corrections never notified the prosecutor of Petitioner's incarceration. Therefore, the 180-day rule was not triggered, and

the trial court did not abuse its discretion or deprive Petitioner of a fair trial by declining to dismiss his case under the rule.

## 2. Failure to Appoint Substitute Counsel

Petitioner alleges next that the trial court abused its discretion by failing to appoint substitute counsel for him despite a conflict of interest between Petitioner and his attorney. The trial court rejected this claim during the post-conviction proceedings because Petitioner had not pointed to any specific disagreements with defense counsel over fundamental trial tactics. The court concluded that Petitioner's general statements about defense counsel's representation did not constitute good cause for substitution of counsel and that Petitioner was not entitled to relief from judgment on the issue.

### a. Clearly Established Federal Law

The Sixth Amendment to the United States Constitution provides the accused in a criminal prosecution "the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. Nevertheless, the right to counsel of choice does not extend to defendants like Petitioner who had counsel appointed for them. *United States v. Gonzalez-Lopez,* 548 U.S. 140, 143, 151 (2006) (quoting *Caplin v. Drysdale, Chartered v. United States*, 491 U.S. 617, 624-35 (1989) ("[T]he Sixth Amendment guarantees a defendant the right to be represented by an

otherwise qualified attorney whom the defendant can afford to hire, or who is willing to represent the defendant even though he is without funds.").

Moreover, an accused "must show good cause such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with his attorney in order to warrant substitution." *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985). Consideration of motions for substitution of counsel "requires a balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice." *Id.*

### b.    Application

On the morning of trial, Petitioner asked the trial court to discharge his trial attorney and to appoint another attorney for him. He claimed that trial counsel did not take his case seriously and was making false allegations, siding with the prosecutor, not doing his job, and not keeping Petitioner's best interests in mind. Petitioner also claimed that the client/attorney relationship was nonexistent. (10/15/09 Trial Tr., A.M. session, at 12-14, ECF No. 8-4 at Pg ID 156-58.)

Defense counsel informed the trial court that he in fact visited Petitioner five times in jail (and had the cards reflecting those visits) and saw Petitioner in the detention area of the courthouse. (*Id.* at 11, 14-15, Pg ID 158-59.) Defense counsel stated that he moved for discovery and to have the matter remanded to the

district court, but the trial court denied his requests. (*Id*. at 15, Pg ID 159.)

Defense counsel noted that he also attempted to get documentation to support

Petitioner's claim under the 180-day rule, and while there was some disagreement

between him and Petitioner, the rules of evidence prevented him from doing some

of the things Petitioner requested. *Id*. Defense counsel maintained that he was

prepared to try the case. *Id.*

Petitioner responded to defense counsel's comments by complaining of the

lack of communication between them. Petitioner claimed he sat in prison for two

and a half months without a visit from counsel and that counsel called him only

one time in four months. (*Id*. at 16.)

The trial court determined that Petitioner failed to allege any details or

specific reasons for discharging defense counsel, and even though there was no

communication for a time, defense counsel had filed motions and participated in

the case. The trial court also took note of defense counsel's caliber and

competence and the fact that the jury was about to be impaneled. (*Id*. at 17-18.)

With these considerations in mind, the trial court denied Petitioner's motion for

substitution of counsel. (*Id*. at 18.)

Petitioner did not renew his request for substitution of counsel, and the

record indicates that he subsequently consulted with counsel on issues such as

whether to testify and which witnesses to call.  In the end, Petitioner appeared to be satisfied with counsel's recommendations regarding trial strategy.  He did not have a constitutional right to a "meaningful relationship" with his attorney, *Slappy*, 461 U.S. at 14, and he has failed to show an actual conflict of interest, a complete breakdown in communication with his attorney, or an irreconcilable conflict with trial counsel.  Therefore, the trial court did not abuse its discretion in denying Petitioner's request to appoint another attorney for him immediately before trial.

### 3.      The Jury Instructions

Petitioner alleges that the trial court abused its discretion by incorrectly instructing the jury on mental anguish.  Because the trial court did not read an instruction on mental anguish, the Court understands Petitioner to be saying that the trial court erred by not addressing the issue of mental anguish during its charge to the jury.

The fact that a jury instruction may have been incorrect under state law is not a basis for habeas relief.  *McGuire*, 502 U.S. at 71-72 (citing *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983)).  The only question on habeas review with respect to jury instructions "is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'"  *Id*. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

In response to Petitioner's jury instruction claim, the trial court pointed out on post-conviction review that mental anguish is not an element of criminal sexual conduct, as charged in this case.  It is only an element in cases where the criminal sexual conduct resulted in personal injury to the victim or where force or coercion was used to accomplish sexual penetration.  *See* Mich. Comp. Laws § 750.520b(1)(f).  Petitioner, however, was charged based on his relation to the victim.  *See id.* §§ 750.520b(1)(b), .520(c)(1)(b).  Neither mental anguish nor personal injury are elements under these provisions.  Therefore, the trial court did not abuse its discretion or deprive Petitioner of due process and a fair trial by failing to instruct the jury on mental anguish.

### 4.    Denying the Motion for a Directed Verdict

Petitioner alleges that the trial court abused its discretion by denying his motion for a directed verdict of acquittal at the close of the prosecution's proofs.

In Michigan, "the trial judge when ruling on a motion for a directed verdict of acquittal must consider the evidence presented by the prosecution up to the time the motion is made, view that evidence in a light most favorable to the prosecution, and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt."  *People v. Hampton*, 285 N.W.2d 284, 288 (Mich. 1979)(internal and end citations omitted).

A state court's alleged misapplication of state law regarding a motion for a directed verdict is not a cognizable claim in a federal habeas corpus proceeding. *King v. Trippett*, 27 F. App'x 506, 510 (6th Cir. 2001).

The victim, moreover, testified that Petitioner penetrated her with his penis and had sexual contact with her when she was fourteen years old. This testimony satisfied the elements of the crimes, namely, penetration and sexual contact with a relative who was at least thirteen years old and less than sixteen years old. *See* Mich. Comp. Laws §§ 750.520b(1)(b)(ii), 750.520c(1)(b)(ii). Consequently, a rational trier of fact could have determined that the prosecution proved the essential elements of the charged crimes beyond a reasonable doubt, and the trial court did not abuse its discretion by denying Petitioner's motion for a directed verdict of acquittal.

### 5. Exceeding the Sentencing Guidelines

Petitioner's final claim about the trial court is that the court exceeded the sentencing guidelines without providing substantial and compelling reasons for the departure. This claim has no basis in fact because the guidelines called for a minimum sentence of ten and a half to thirty-five years in prison, and the trial court sentenced Petitioner within that range to a minimum sentence of twenty-two years,

nine months.  (11/25/09 Sentencing Tr. at 35-37, ECF No. 8-7 at Pg ID 630-32.)

Therefore, Petitioner's claim lacks merit.

###    H.    Claim Eight:  Additional Prosecutorial Misconduct

Petitioner asserts that the prosecutor deprived him of a fair trial by coaching

witnesses, using perjured testimony, intimidating witnesses, and shielding the

victim from him.

###    1.    Clearly Established Federal Law

As noted above, the relevant question on review of the prosecutor's conduct

is whether the conduct infected the trial with such unfairness as to make the

resulting conviction a denial of due process.  *Darden*, 477 U.S. at 181.  The trial

court found no merit in Petitioner's prosecutor-misconduct claim when addressing

the issue on post-conviction review, and this Court may not set aside that

conclusion unless Petitioner shows that the state court's determination was

unreasonable.

Petitioner contends that the prosecutor relied on false testimony and

intimidated her key witnesses.  Prosecutors may not deliberately deceive a court or

jurors by presenting evidence that they know is false.  *Giglio v. United States*, 405

U.S. 150, 153 (1972).  But to prevail on a claim that the prosecutor relied on false

testimony, a habeas petitioner must show that (1) the testimony was actually false,

(2) the testimony was material, and (3) the prosecutor knew the testimony was false. *Amos v. Renico*, 683 F.3d 720, 728 (6th Cir. 2012); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998) (quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989)).

### 2.    Application

In an affidavit signed about two and a half years after Petitioner's trial, the victim states that she does not know why she was asked to go to court because "nothing happen[ed]." She goes on to say that her Uncle Collin "did not touch her" and that the only reason she said something different to people in the juvenile home was to get out of the home early. (*See* ECF No. 8-16 at Pg ID 1307.)

The victim's mother states in an affidavit that she and the victim were forced to perjure themselves at Petitioner's trial and that the prosecutor forced her to go to court by threatening to get a warrant for her arrest. (*Id.* at Pg ID 1313.) The mother also states that the victim did not want anything to do with the case and that the prosecutor used the victim's juvenile case against her. (*Id*.) According to the mother, the victim did not want to have her uncle go away for something that the victim said out of spite and anger. (*Id*.) The mother further states that she and her daughter would like Petitioner to be free and back with his family because "[t]his was all a big mistake, all is forgiven." (*Id*.)

37

The trial transcript reflects that the victim was soft-spoken at trial and stopped answering questions at one point. (10/15/09 Trial Tr., Afternoon Session, at 69-75, ECF No. 8-5 at Pg ID 352-58.) The prosecutor's and defense counsel's closing arguments suggested that the victim was even rude to the attorneys during her testimony. (10/16/05 Trial Tr. at 122-23, 133, ECF No. 8-6 at 539-40, 550). Nevertheless, the record does not support the contention that the prosecutor encouraged the victim or her mother to lie, coerced them into testifying against Petitioner, or intimidated them. The witnesses may have felt pressured to testify, but Petitioner has failed to show that the witnesses testified falsely and that the prosecutor knew that the testimony was false. The victim's recanting affidavit, moreover, must be viewed with "extreme suspicion." *Williams v. Coyle*, 260 F.3d 684, 708 (6th Cir. 2001).

Even if the prosecutor's conduct was improper, defense counsel was able to effectively challenge the victim's testimony by highlighting inconsistencies in her testimony, by describing her as a troubled young woman, and by emphasizing that she delayed disclosing the crimes for years. The jury had sufficient information to assess the witnesses' credibility, and any impropriety on the part of the prosecutor did not deprive Petitioner of a fair trial or due process.

Petitioner's claim about being shielded from the victim is based on the fact that the victim apparently did not face him when she testified. She did, however, testify before the jury in open court, and defense counsel had an ample opportunity to cross-examine her. The trial court correctly observed on review of Petitioner's claim that Petitioner's right of confrontation was not violated. *See Maryland v. Craig*, 497 U.S. 836, 846 (1990) (stating that "physical presence, oath, cross-examination, and observation of demeanor by the trier of fact—serves the purposes of the Confrontation Clause by ensuring that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of Anglo–American criminal proceedings"). Petitioner's claims about the prosecutor lack merit and do not entitle him to relief.

## I.      Claim Nine:  Lack of Probable Cause

Petitioner contends that the charges against him should have been dismissed because no felony complaint was filed and the police lacked probable cause to arrest him. Petitioner alleges that the officer who made the decision to arrest him failed to conduct an independent verification of the allegations and, instead, relied on comments made by an employee of Children's Village. The state trial court concluded on post-conviction review of this claim that the victim's allegations

provided probable cause to believe Petitioner had committed criminal sexual conduct.

The Fourth Amendment applies to the States through the Fourteenth Amendment, *Dunaway v. New York*, 442 U.S. 200, 207 (1979), and it states that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause . . . ."    U.S. Const., amend. IV.  Thus, "[i]t is abundantly clear that an arrest warrant is valid only if supported by probable cause." *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999).

"Probable cause exists where 'the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar v. United States* 338 U.S. 160, 175-76 (1949) (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)).  "[R]eliance on the statements of the victim and an eyewitness alone may be sufficient to establish probable cause." *Crockett v. Cumberland Coll.*, 316 F.3d 571, 582 (6th Cir. 2003)).  In fact, the victim's "accusation that she had been sexually assaulted by [Petitioner], standing alone, was sufficient to establish probable cause." *Ahlers*, 188 F.3d at 370.

Furthermore, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). "[T]he *Powell* 'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013), *cert. denied*, 135 S. Ct. 1174 (2015).

"Michigan provide[s] an adequate avenue to raise a Fourth Amendment claim," and Petitioner has not shown "that his claim was frustrated by a failure in Michigan's Fourth-Amendment-review mechanism." *Hurick v. Woods*, 672 F. App'x 520, 535 (6th Cir. 2016), *cert. denied*, 138 S. Ct. 96 (2017). For this additional reason, his Fourth Amendment claim lacks merit.

## J.    Claim Ten: Additional Ineffective Assistance of Trial Counsel

In claim ten, Petitioner raises additional claims about his trial attorney. He asserts that trial counsel was ineffective for failing to investigate witnesses and consult with him about trial strategy.

### 1. Failure to Investigate

Defense attorneys have "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). But the relevant question is whether counsel's choices were reasonable, *id*., and the Court "must presume that decisions of what evidence to present and whether to call or question witnesses are matters of trial strategy." *Cathron v. Jones*, 77 F. App'x 835, 841 (6th Cir. 2003) (citing *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002)).

Petitioner alleges that an investigation of witnesses would have revealed that he was not present at his father's house when the victim was there. To support this claim, Petitioner relies on his father's undated affidavit in which he states that Petitioner did not stay at his house when the victim stayed there overnight and that he would have known if Petitioner came home during the night, because he (the father) was always up by 4:00 a.m. The elder Mr. Pittman also states in his affidavit that he did not have a chance to testify at Petitioner's trial. (*See* ECF No. 8-16 at Pg ID 1310.)

Petitioner's nephew makes similar statements in his affidavit. He avers that he never saw Petitioner at the house when the victim stayed there overnight and that Petitioner's trial attorney told him that he did not have to testify. (*See id*. at Pg ID 1311.)

The victim testified, however, that the crimes occurred one night when her grandfather and brother were sleeping and that the incident did not last a long time. (10/15/09 Trial Tr., Afternoon Session, at 67, 76, and 86, ECF No. 8-5 at Pg ID 350, 359, 369.) It is possible that the incident occurred without the elder Mr. Pittman's knowledge and when the nephew also was sleeping or was not present in the house.

Furthermore, when Petitioner informed the trial court during trial that he wanted defense counsel to produce his father, nephew, and brother as witnesses, defense counsel stated that he had interviewed those witnesses. (10/16/09 Trial Tr. at 95, ECF No. 8-6 at Pg ID 513.) Defense counsel went on to say that he did not think it was in Petitioner's best interests to call the witnesses, that the witnesses would hurt the defense strategy, and that he would be neglecting his duty as counsel to place the witnesses on the stand. (*Id*. at 95-98, Pg ID 512-18.)

Petitioner's father was ill and not available to testify that day, but Petitioner's brother was in the courthouse, and, at Petitioner's insistence, defense

counsel called the brother as a witness. (*Id*. at 99-100., Pg ID 516-17.) At the conclusion of his brother's testimony, Petitioner informed defense counsel and the trial court that he did not want counsel to request a continuance for the purpose of calling additional witnesses and that he was satisfied and prepared to rest his case. (*Id*. at 118, Pg ID 535.)

Given this record, Petitioner's contention that defense counsel was ineffective for not investigating witnesses lacks merit. Defense counsel did interview the witnesses, he did not think they would make good witnesses, and Petitioner ultimately agreed with defense counsel's strategy. The trial court's rejection of Petitioner's claim was not contrary to, or an unreasonable application of, *Strickland*.

### 2.     **Failure to Consult**

Petitioner further alleges that defense counsel failed to consult him on trial strategy.

"[A]n attorney 'has a duty to consult with the client regarding 'important decisions,' including questions of overarching defense strategy.'" *Valenzuela v. United States*, 217 F. App'x 486, 490 (6th Cir. 2007) (quoting *Florida v. Nixon,* 543 U.S. 175, 187 (2004)). Nevertheless, "this duty, and the others owed by counsel, do not provide a checklist for judicial evaluation of attorney

performance." *Lewis v. Alexander*, 11 F.3d 1349, 1353 (6th Cir. 1993) (citing *Strickland,* 466 U.S. at 688). "[C]ounsel may exercise his professional judgment with respect to the viability of certain defenses and evidentiary matters without running afoul of the Sixth Amendment." *Id*. at 1353–54.

Petitioner contends that if defense counsel had consulted him, counsel would have learned that Petitioner had a strained relationship with the victim because he had intervened in an argument between the victim and her mother. The victim testified, however, that she formerly had a close relationship with Petitioner and that she liked him. (10/15/09 Trial Tr., Afternoon Session, at 65, ECF No. 8-5 at Pg ID 348.) The victim's mother confirmed the existence of the close relationship between Petitioner and the victim; she also said that Petitioner had never disciplined the victim. (10/16/09 Trial Tr. at 10, 32, ECF No. 8-6 at Pg ID 427, 440.) Even Petitioner's brother testified that Petitioner and the victim got along fine and that there was no bad blood between the two of them. (*Id*. at 116, Pg ID 533.)

Defense counsel, moreover, informed the trial court that he visited Petitioner five times in prison, met with Petitioner in the detention area of the courthouse, and was prepared for trial. (10/15/09 Trial Tr., A.M. Session, at 14-15, ECF No. 8-5 at Pg ID 158-59.) Defense counsel also consulted Petitioner at various times

during the trial, and he exercised reasonable judgment regarding the viability of possible defenses.

The record fails to support Petitioner's claim that his attorney did not consult him on trial strategy. Thus, the trial court's conclusion – that Petitioner had failed to show he was denied effective assistance of counsel – was neither contrary to, nor an unreasonable application of, *Strickland*.

### K.      Claim Eleven:  Newly Discovered Evidence

Petitioner contends that he is entitled to a new trial on the basis of newly discovered impeachment evidence that the victim recanted her accusations. Petitioner contends that, at a minimum, an evidentiary hearing should be held to expand the record.

The victim's recanting affidavit must be viewed with extreme suspicion. *Williams v. Coyle*, 260 F.3d at 708. Further, to the extent Petitioner is claiming to have newly discovered evidence of actual innocence, his claim fails for the following reasons.

"Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993).  "This rule is grounded in the

principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Id*.

"To be credible, [a claim of actual innocence] requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324 (1995). Petitioner purports to have impeachment evidence, but impeachment evidence "is a step removed from evidence pertaining to the crime itself." *Calderon v. Thompson*, 523 U.S. 538, 563 (1998). "This sort of latter-day evidence brought forward to impeach a prosecution witness will seldom, if ever, make a clear and convincing showing that no reasonable juror would have believed the heart of [the witness's] account of petitioner's actions." *Sawyer v. Whitley*, 505 U.S. 333, 349 (1992).

The Court concludes that Petitioner has fallen short of making the threshold showing for a claim of actual innocence. Accordingly, the Court rejects his claim of newly discovered evidence.

### L.    Claim Twelve:  Ineffective Assistance of Appellate Counsel

In his twelfth and final claim, Petitioner alleges that he was denied his right to effective assistance of appellate counsel. Petitioner contends that appellate

counsel was ineffective for failing to raise his claims about the trial court's rulings, jury instructions, and sentence, the prosecutor's conduct, and the alleged lack of probable cause. The trial court determined on post-conviction review that appellate counsel was not ineffective for failing to raise all of petitioner's claims on appeal, and that Petitioner was not prejudiced by counsel's performance.

Claims of ineffective assistance of appellate counsel are governed by the same *Strickland* standard as claims of ineffective assistance of trial counsel. *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010). To prevail on his claim, Petitioner "must show that his [appellate] counsel's performance was deficient and that he was prejudiced as a result." *Id.* (citing *Strickland*, 466 U.S. at 687). This requires demonstrating (1) that his attorney acted unreasonably in failing to discover and raise nonfrivolous issues on appeal and (2) there is a reasonable probability he would have prevailed on appeal if his attorney had raised the issues. *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000) (citing *Strickland*, 466 U.S. at 687-91, 694).

For the reasons given in this opinion, Petitioner's underlying claims about the trial court, the prosecutor, his arrest, and trial counsel are meritless. "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit," *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001), and because

there is not a reasonable probability that Petitioner would have prevailed on appeal if his appellate attorney had raised all his claims, Petitioner has failed to show that he was prejudiced by his attorney's performance. The state trial court's rejection of Petitioner's claim about appellate counsel was neither contrary to, nor an unreasonable application of, *Strickland* or *Smith v. Robbins*.

## V.    CONCLUSION, DENIEAL OF CERTIFICATE OF APPEALIABILITY AND LEAVE TO PROCEED IN FORMA PAUPERIS

For the reasons set forth above, this Court holds that the state courts' rejection of Petitioner's claims was neither contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, nor an unreasonable application of the facts. The state courts' decisions also were not "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Accordingly, the Court is denying Petitioner's request for habeas relief under § 2254.

Before Petitioner may appeal this decision, he must obtain a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district

court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327.

Reasonable jurists could not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. The Court, therefore, declines to issue a certificate of appealability.

Nevertheless, because Petitioner was granted in forma pauperis status in this Court, he may proceed in forma pauperis on appeal without further authorization from this Court. Fed. R. App. P. 24(a)(3).

Accordingly,

**IT IS ORDERED** that the petition for writ of habeas corpus (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner may proceed in forma pauperis on appeal.

Dated: February 6, 2018    s/Linda V. Parker
             U.S. District Court Judge

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 6, 2018, by electronic and/or ordinary mail.

s/Julie Owens acting in the absence of Richard Loury
Case Manager